UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Bryan Esmond, Ronald Moran, and Joseph Nettles<br><br>Plaintiffs,<br><br>v.<br><br>Bridgeview Finance LLC, and Sarah Reardon<br><br>Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

### INTRODUCTION

1. Americans receive billions of spam text messages every year.

2. Like most Americans, Plaintiffs Bryan Esmond ("Esmond"), Ronald Moran ("Moran"), and Joseph Nettles ("Nettles") (collectively "Plaintiffs") each have a mobile residential telephone.

3. Being mobile, Plaintiffs takes their phone everywhere. Plaintiffs use their phone to receive and make important calls, to get emergency information, and to send text messages to family members and friends. Esmond, Moran, and Nettles use their respective phones in their home and for their personal enjoyment.

4. But each Plaintiffs' home, phone, and privacy has been invaded by the non-emergency text messages from Defendants Bridgeview Finance LLC ("Bridgeview") and Sarah Reardon ("Reardon").

CLASS COMPLAINT - 1

5. Plaintiffs have no relationship with Defendants, have no account with Defendants, have never provided any phone number to Defendants, and have never agreed for Defendants to send any type of communication.

6. Plaintiffs have tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering their phone numbers on the National Do Not Call Registry ("DNCR"), but even that did not work.

7. Defendants simply blast text messages without caring if consent was obtained or if the recipient was on the DNCR.

8. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

9. Plaintiffs bring this action for themselves and for other similarly situated people to enjoin these abusive practices and for damages.

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

12. This Court has supplemental jurisdiction over the Washington state claims under 28 U.S.C. § 1367.

**PARTIES**

13. Plaintiff Bryan Esmond is a resident of Klamath Falls, Oregon.

14. Plaintiff Ronald Moran is a resident of Burien, Washington.

15. Plaintiff Joseph Nettles is a resident of Youngstown, Florida.

CLASS COMPLAINT - 2

LawHQ, P.C.
299 S. MAIN ST. STE 1300
SALT LAKE CITY, UT 84111
385-285-1090

16. Defendant Bridgeview Finance LLC is a Delaware Limited Liability Company with its principal place of business in Vancouver, Washington.

17. Defendant Sarah Reardon is a resident of Vancouver, Washington.

**FACTUAL ALLEGATIONS**

18. Esmond is the residential subscriber of the cell phone number 541-591-7738. He uses this number for personal use at home. He registered 541-591-7738 on the DNCR to stop telephone solicitations on July 23, 2022.

19. Moran is the residential subscriber of the cell phone number 206-981-1705. He uses this number for personal use at home. He registered 206-981-1705 on the DNCR to stop telephone solicitations on September 13, 2022. The 206 area code is assigned to numbers in the State of Washington.

20. Nettle is the residential subscriber of the cell phone number 850-303-1308. He uses this number for personal use at home. He registered 850-303-1308 on the DNCR to stop telephone solicitations on November 17, 2019.

21. Bridgeview is believed to be incorporated by Reardon. Upon information and belief, Reardon is the owner and controlling member of Bridgeview.

22. On or about March 20, 2020, Bridgeview registered as a foreign corporation with the State of Washington. On May 12, 2023, Bridgeview filed a Statement of Withdrawal of the foreign registration. That Statement of Withdrawal was signed by Reardon.

23. The Statement of Withdrawal came about one week after Bridgeview was notified via e-mail of the TCPA claims of Esdmond and others represented by Plaintiff's counsel.

24. Bridgeview has knowingly and willfully texted Esmond at least 50 times to date. Among these texts are the following examples:

  i. Hey Bryan this week with Bridgeview we may extend a new amount for your monthly expenses visit zuxzo.co/FBPNSIM or reply stop to end - **Sent 10/5/22 from short code 80429 to #1-541-591-7738**

CLASS COMPLAINT - 3

      ii.    Hi Bryan, your profile has been updated we may extend up to 3.5k to cover your September expenses visit etarupc.co/9QH0MJY msg stop to end
- **Sent 09/28.2022 from short code 80429 to #1-541-591-7738**

      iii.    Hey Brian, we reviewed your score & can offer you up to 3500 for the end of July visit rxuke.co/He7Lv2i to view or msg opt-out to quit
- **Sent 8.2.2022 from short code 94981 to (541) 591-7738**

      iv.    Hey Brian, we reviewed your score & can offer you up to 3500 for the end of July visit rxuke.co/He7Lv2i to view or msg opt-out to quit
- **Sent 7.28.2022 from short code 94981 to (541) 591-7738**

      v.    Hi, based on your standings Brian we may extend an amount of 3250 just in time for the weekend visit txzeo.co/QAVhIKG or reply 'stop' to end
- **Sent 7.22.2022 from short code 94981 to (541) 591-7738**

      vi.    Hi Brian, you can access a new amount today up to 3000 visit dpkrc.co/TewkQbO to view or msg STOP to end
- **Sent 7.13.2022 from short code 94981 to (541) 591-7738**

25. Bridgeview has knowingly and willfully texted Moran at least four times to date. Among some of these texts are the following examples:

      i.    Hi Vada, an extra 2650 is available for you to obtain in record time this week begin here ekmdz.co/OIra2to or msg END to quit
**Sent 8.4.22 from short code 48024 to (206) 981-1705**

      ii.    Hi Vada, we may now extend a new amount over 3500 for your July needs visit adjuvant.info/fucvEgu text stop to end
**Sent 7.19.22 from short code 94981 to (206) 981-1705**

      iii.    Hi Vada, after initial review we can offer up to 4000 for your July expenses just visit ioppp.co/SVoA2LL or msg stop to end
**Sent 7.14.22 from short code 94981 to (206) 981-1705**

26. Bridgeview has knowingly and willfully texted Nettles at least 18 times to date. The messages to Nettles were sent even after Bridgeview was notified of the TCPA claims of Esmond and others on May 5, 2023. For example, the following messages were received by Nettles:

CLASS COMPLAINT - 4

       i. Hi Joseph, BridgeNotifications may assist with a clear new amount over this week visit pgudb.co/VO26JK4 or msg STOP to end
**Sent 5.19.23 from shore code 51262 to (850) 303-1308**

       ii. BridgeNotifications: Joseph your profile has posted a new update. Login today to accept over 4500 this week iulmx.co/69D9ME0 or msg STOP to end
**Sent 5.23.23 from short code 51262 to (850) 303-1308**

       iii. Hi Joseph, records are showing you may be eligible for a new amount today you can visit qnkvw.co/L7O47FH or reply STOP to cancel
**Sent 5.31.23 from short code 51262 to (850) 303-1308**

       iv. BridgeNotifications: Records show Joseph we may expand your amount for your June expenses visit lncuv.co/S8LA581 to obtain or msg STOP to quit
**Sent 6.7.23 from short code 51262 to (850) 303-1308**

27. The messages to Nettles are continuing, weeks after Reardon filed the Notice of Withdrawal for Bridgeview with the State of Washington. Some examples of those recent messages are:

       i. Hi Joseph, you have a pre-checked amount of 4500 this week to request visit ikivm.co/QJTQYKM or reply END to quit
**Sent 6.15.23 from short code 51262 to (850) 303-1308**

       ii. BridgeNotification: Hi Joseph your account standings are clear. Accept up to 3650 available for the weekend visit dfiqg.co/Q8EETLF or reply STOP 2 quit
**Sent 7.7.23 from short code 51262 to (850) 303-1308**

28. The sender of these texts did not disclose their individual name, nor the name of the business entity whose goods and services were being promoted.

29. The links in the messages went to various websites owned and controlled by Bridgeview that promoted loans and/or other financial services.

30. Bridgeview initiated the text messages using an automated system. This is based on the following facts:

       i. the text messages provided mechanical opt-out instructions, which is not something an individual does but instead is something an autodialer does;

CLASS COMPLAINT - 5

LawHQ, P.C.
299 S. MAIN ST. STE 1300
SALT LAKE CITY, UT 84111
385-285-1090

      ii. the text messages came from an SMS short code which is not possible with a regular telephone;

      iii. many people have reported getting unsolicited text messages from Bridgeview; and

      iv. Bridgeview has initiated a high volume of text messages within a relatively short period of time.

31. Plaintiffs' counsel represents numerous other persons that have received multiple unsolicited telemarketing text messages from Defendants.

32. On information and belief, Defendants initiate and make tens of thousands of similar text messages to thousands of people.

33. The unwanted spam is incredibly annoying, distracting, and frustrating to Esmond, Moran, Nettles, and the class members. The spam invades their substantive right to privacy, namely the right to be free from unsolicited text messages. How can they get these spam callers to stop? The spam causes Esmond, Moran, Nettles, and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted text messages. The spam reduces their phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

34. By initiating text messages to Esmond, Moran, Nettles, and the class members, Bridgeview has harmed Esmond, Moran, Nettles, and the class members in the exact way Congress sought to protect in enacting the TCPA.

## PERSONAL LIABILITY

35. **Personal Liability**. Individuals may be personally liable for TCPA violations when the individual "actually committed the conduct that violated the TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

36. Upon information and belief, Reardon has direct control over the telemarketing operations of Bridgeview and direct knowledge of the messages sent in violation of state and federal law.

37. Reardon withdrew the corporate registration of Bridgeview in the State of Washington, the state in which Bridgeview's principal place of business is located. Despite the withdrawal, upon information and belief, Reardon continues to operate under the dba/business name of Bridgeview Finance and has continued to send unsolicited telemarketing text messages.

38. Reardon was alerted via e-mail of the claims of Byran and others approximately one week before the registration was withdrawn, but messages were still sent to Nettles and others thereafter.

## LEGAL STANDARD

39. **Autodialed Calls and Text Messages**. The TCPA prohibits calls and text messages to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(a)(1). Calls and text messages that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

40. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

41. **Identification of Caller**. The TCPA requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

42. **Text Messages Are Calls.** Both phone calls and text messages qualify as a "call." *Satterfield v. Simon Schuster*, 569 F.3d 946, 952-54 (9th Cir. 2009) (citing *In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Red. 14014, 14115 ¶ 165, 2003 WL 21517853).

43. **Commercial Electronic Text Messages pursuant to Washington Law**. "No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060.

## CLASS ACTION ALLEGATIONS

44. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Esmond, Moran, and Nettles brings this action on behalf of themselves, and four Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

45. **Class Definitions**. Plaintiffs along with others similarly situated, propose the following classes:

> **The Automated Texts Class**
> All people in the United States who (1) within four years prior to the filing of this action and through certification, (2) Defendant sent a text message to their cellular telephone, (3) using the same equipment or type of equipment utilized to send text messages to Plaintiffs.
>
> **The Failure To Identify Class**
> All people in the United States (1) who within four years prior to the filing of this action and through certification, (2) Defendant sent more than one telemarketing text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the text message did not disclose the identity of the individual caller and the identity of the entity on whose behalf the call was made.
>
> **The National DNCR Class**
> All people in the United States (1) to whom Defendant initiated more than one telephone solicitation within any 12-month period, (2) to their residential cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) in the four years from the filing of this action through the date of class certification.

CLASS COMPLAINT - 8

**LawHQ, P.C.**
299 S. MAIN ST. STE 1300
SALT LAKE CITY, UT 84111
385-285-1090

**Washington Commercial Text Message Class**
All people in the State of Washington (1) within the four years prior to the filing of this action, (2) Defendant sent a commercial text message, (3) to their cellular telephone number, (4) that had not clearly and affirmatively consented in advance to receive the commercial text messages.

46. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

47. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

48. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least 40 members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

49. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

50. There are questions of law and fact common to the proposed including:

    i. Did they receive a text from Defendants?

    ii. Were the numbers texted registered on the Do Not Call Registry?

    iii. Did Defendant use an ATDS?

    iv. Did the text properly disclose the identity of Defendant?

    v. Were the text messages for an emergency purpose?

51. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

Plaintiffs' claims herein are typical of those of the Classes they seek to represent. Esmond's, Moran's Nettles's and the Class members' claims arise from the same conduct of Defendant.

52. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class? Plaintiffs are adequate representatives of the Classes because their interests are common with the interests of the Classes, and they will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiffs are represented by counsel competent and experienced in TCPA and class action litigation.

CLASS COMPLAINT - 10

53. **Predominance of Common Questions.** A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required.

54. **Superiority**. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

55. In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violations of the TCPA are small. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

56. Managing this case as a class action should have no significant difficulties. Notice to class members can be provided by mail. The law applicable to each putative class member is

identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to these questions will determine Defendant's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

### FIRST CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)
### (On Behalf of the Automated Texts Class)

57. Defendant's use of an ATDS to contact Esmond, Moran, Nettles and members of the Automated Texts Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

58. As a result, Esmond, Moran, Nettles and members of the Automated Texts Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Because the violation was knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

60. Esmond, Moran, Nettles and members of the Automated Texts Class are also entitled to injunctive relief prohibiting Defendant from using an ATDS when sending telemarketing text messages without the prior express written consent of the called party.

### SECOND CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
### (On Behalf of the Failure to Identify Class)

61. Defendant's sending of telemarketing text messages to the residential cellular telephones of Esmond, Moran, Nettles and members of the Failure to Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

62. As a result of the violations of 47 C.F.R. § 64.1200(d), Esmond, Moran, Nettles and members of the Failure to Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

63. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

64. Esmond, Moran, Nettles and members of the Failure to Identify Class are also entitled to and seek injunctive relief requiring Defendant to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

### THIRD CAUSE OF ACTION
**Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of the Do Not Call Class)**

65. Defendant's telephone solicitations via text message to the residential cellular telephones of Esmond, Nettles, and members of the Do Not Call Class, while on the National Do Not Call Registry constitute a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

66. As a result of the violation of 47 C.F.R. § 64.1200(c), Esmond, Nettles and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

67. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

68. Esmond, Nettles and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendant from sending telephone solicitations via text messages to phone numbers on the DNCR.

### FOURTH CAUSE OF ACTION
**Violations of Washington Statutes § RCW 19.190.060**
**On Behalf of the Washington's Commercial Electronic Text Messages Class**

69. Defendant violated RCW 19.190.060 by initiating or assisting in the transmission of electronic text messages to Moran and members of the Washington Commercial Electronic Text Messages Class without consent.

70. Moran, and members of the Washington Commercial Electronic Text Messages Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. RCW 19.190.040(1); see also *Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017) (finding a violation of RCW 19.190.040 is a violation of Washington's Consumer Protection Act and establishes both the injury and causation elements thereof).

71. The court should enjoin Defendant from sending commercial text messages to Washington residents without clear and affirmative consent. RCW 19.86.090.

## RELIEF REQUESTED

72. Esmond, Moran, Nettles and members of all classes, respectfully request that the Court grant all Class members the following relief against Defendant:

    A. Certification of the proposed Classes;

    B. Appointment of Esmond, Moran, and Nettles as class representatives;

    C. Appointment of the undersigned as counsel for the Classes;

    D. An order enjoining Defendant from using an ATDS when sending telemarketing text messages without the consent of the called party;

    E. An order enjoining Defendant from sending telephone solicitations via text messages to phone numbers on the DNCR;

    F. An order requiring Defendant to disclose the actual name of the individual as well as the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing;

    G. An award of damages to Esmond, Moran, Nettles and the Classes, as allowed by law;

    H. Punitive and exemplary damages for the willful misconduct; and

    I. Orders granting such other relief as the Court deems necessary, just, and proper.

# JURY DEMAND

Esmond, Moran, and Nettles request a jury trial as to all claims of the Complaint so triable.

Dated: July 20, 2023

Respectfully Submitted,

/s/ Conner Spani
Conner Spani, WSBA # 58788
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
conner.spani@lawhq.com

*Attorney for Plaintiff*

CLASS COMPLAINT - 15